| | |
|---|---|
| **MAACO FRANCHISOR SPV, LLC,** ) <br> **successor in interest to, MAACO** ) <br> **FRANCHISING, LLC, f/k/a, MAACO** ) <br> **FRANCHISING, INC.,** ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> **KENNEVAN, LLC, ZACHARY** ) <br> **LAFFERTY, and KARA LAFFERTY,** ) <br> ) <br> Defendants. ) | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. No. 3). Having considered Plaintiff's motion and reviewed the pleadings, the Court enters the following Order.

**I.    Background**

In this breach of contract action, Plaintiff Maaco Franchisor SPV, LLC has named as Defendants Kennevan, LLC, Zachary Lafferty, and Kara Lafferty.[1] Plaintiff alleges that Defendants violated the parties' Franchise Agreement dated March 28, 2011 (the "Franchise Agreement"). More specifically, Plaintiff alleges that Kennevan and Maaco entered into the Franchise Agreement and that the Laffertys executed a Personal Guaranty guaranteeing all of Kennevan's obligations under the Franchise Agreement and agreeing to be jointly and severally bound by the Franchise Agreement terms. The Franchise Agreement gave Kennevan the right to operate a Maaco Center located at 4505 S. 84th Street in Omaha, Nebraska (the "Franchise

---

[1] "Plaintiff" or "Maaco" refers to the two Maaco entities named as Plaintiffs in the Complaint.

-1-

Location"). (Doc. No. 1 at ¶ 19: Compl.). Maaco alleges that Kennevan breached the Franchise Agreement's terms by (1) ceasing to operate a Maaco franchise at the Franchise Location; (2) failing to pay the required royalties and advertising fees; and (3) operating a competing business at the Franchise Location, in violation of a covenant not to compete in the Franchise Agreement and Personal Guaranty. (Id. at ¶ 25).

Specifically, as to the covenant not to compete, Defendants agreed that during the term of the Franchise Agreement, Defendants would not "[o]wn, maintain, engage in, be employed by, finance, assist or have any interest in any other business providing, in whole or in part, motor vehicle painting or body repair services or products." (Verified Compl. at Ex. 1, Article18(B)(3)). In addition, Defendants agreed that for a period of one (1) year following the termination or expiration of the Franchise Agreement or the date of compliance, whichever occurred later, they would not "directly or indirectly, for [themselves], or through, on behalf of, or in conjunction with any person, persons, [or legal entity] . . . [o]wn, maintain, engage in, be employed by, finance or make loans to, advise, assist, or have any interest in or relationship or association with any business providing, in whole or in part, motor vehicle painting or body repair services or products at the premises of the [Franchise Location] or within a radius of ten (10) miles of the [Franchise Location] or of any other Maaco Center or MAACO location that was in existence at the time [Kennevan] signed [the] Franchise Agreement." (Id. at ¶ 29; Ex. 1, Article 18(C)(2)).

According to Plaintiff Maaco, during their term as authorized Maaco franchisees, Defendants breached their obligations and promises under the Franchise Agreement by ceasing to operate a Maaco franchise at the Franchise Location, failing to pay Maaco all of the required

-2-

Case 3:20-cv-00149-MOC-DCK   Document 28   Filed 09/17/20   Page 2 of 13

royalties and advertising fees, and operating a competing business at the Franchise Location. (Id. at ¶¶ 40-42 and 47-49).  Accordingly, on December 24, 2019, Maaco provided notice to Defendants of their breach of the Franchise Agreement and demanded that Defendants comply with their obligations arising under the same.  (Id. at ¶ 30).

Defendants counter that that they terminated the Franchise Agreement effective October 28, 2019, due to Maaco's substantial and material breaches of the Franchise Agreement—specifically, because Maaco failed to properly advertise and generate business for the franchise, making it impossible for Defendants to continue operating the Franchise Business.  Defendants further assert that, after they terminated the Franchise Agreement, Mr. Lafferty immediately removed all references to the Maaco name from the exterior and interior of the building; immediately stopped using any and all Maaco information, including, but not limited to, all manuals, operating systems, publications, policies, methods, systems and procedures; and started operating a new and distinct business based on Mr. Lafferty's wholesale dealership work called AllStar Auto Body & Paintworks.  Maaco alleges that Defendants are operating this new business in violation of the agreed-to covenant not to compete in the Franchise Agreement. Maaco requests that the Court enter a preliminary injunction, directing Defendants to

> 1. Cease and refrain, from (1) any further use of Maaco's trade name, logo, marks, advertising, telephone listing, forms, manuals, products, computer software, merchandise, and all other things and materials of any kind which are identified or associated in the mind of the consuming public with Maaco; (2) diverting or attempting to divert any business or customer of Maaco to any competitor, by direct or indirect inducement; or (3) doing or performing, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Maaco's trade name, logo, marks, or any other thing or material of any kind which are identified or associated in the mind of the consuming public with Maaco.
>
> 2. Cease and refrain, from directly or indirectly (such as through corporations or

other entities owned or controlled by them) owning, maintaining, engaging in, being employed by, financing or making loans to, assisting, advising, or having any interest in or relationship or association with any business providing, in whole or in part, motor vehicle painting or body repair services or products until such time as the Franchise Agreement is terminated.

3. Cease and refrain, for one (1) year following the termination of the Franchise Agreement or from the date of compliance with their obligations arising thereunder, whichever occurs later, from directly or indirectly (such as through corporations or other entities owned or controlled by them), owning, maintaining, engaging in, being employed by, financing or making loans to, assisting, advising, or having any interest in or relationship or association with any business providing, in whole or in part, motor vehicle painting or body repair services or products at the premises previously occupied as a Maaco center located at 4505 South 84th Street, Omaha, Nebraska or within a radius of ten (10) miles of such location or of any other Maaco center or Maaco location that was in existence at the time than Kennevan signed the Franchise Agreement.

## II.     Legal Standard

Whether to grant injunctive relief is within the sound discretion of the district court. See Hughes Network Sys. v. InterDigital Commc'ns Corp., 17 F.3d 691, 693 (4th Cir. 1994). However, granting a preliminary injunction "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way. The danger of a mistake in this setting is substantial." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 284 (4th Cir. 2002) (citations and internal quotations omitted). Consequently, a preliminary injunction is "an extraordinary remedy . . . which is to be applied 'only in [the] limited circumstances' which clearly demand it." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1992) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989)). The injunction must "be tailored to restrain no more than what is reasonably required to accomplish its ends." Consolidation Coal Co. v. Disabled Miners of S. W. Va., 442 F.2d 1261, 1267 (4th Cir. 1971).

To secure a preliminary injunction, a party must establish (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008). While a balancing test was previously used, today every preliminary injunction factor must be "satisfied as articulated" and courts "must separately consider each Winter factor." Pashby v. Delia, 709 F.3d 307, 320 (4th Cir. 2013) (citing The Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 347 (4th Cir. 2009)).

**III.     Discussion**

   *a. Likelihood of Success on the Merits*

In support of the preliminary injunction motion, Plaintiff contends that it is likely to succeed on its breach of contract claims against Defendants and, specifically, on the claim for breach of the covenant not to compete. In opposing the motion for preliminary injunction, Defendants contend that, assuming that the non-compete clause in the Franchise Agreement is valid and enforceable, Maaco is still not entitled to the equitable injunctive relief sought due to its own material breach of the Franchise Agreement in that: Maaco failed to provide Defendants with the contractually required advertising and marketing, and instead diverted such funds to boost its bottom line in an effort to appear attractive for potential buyers; and Maaco's failure to perform its fundamental contractual obligations to Defendants completely undermined Defendants' ability to succeed as a Maaco franchise, sabotaged the success of Defendants' business, and made it impossible for Defendants to continue as a franchisee. Defendants maintain that, under such circumstances, Maaco is not entitled to enforce the restrictive covenant. See Maaco Franchising, LLC v. Ghirimoldi, No. 3:15-CV-99, 2015 WL 4557382, at

\*\*6–7 (W.D.N.C. July 28, 2015).  As Defendants note, relief to enforce the terms of a noncompete will not be granted to a party who has committed a breach that is substantial and material and goes to the heart of the agreement.  Combined Ins. Co. of Am. v. McDonald, 36 N.C. App. 179, 183, 243 S.E.2d 817, 819 (1978) (citing Wilson v. Wilson, 261 N.C. 40, 43, 134 S.E.2d 240, 242 (N.C. 1964)).  This is so because North Carolina "courts have long recognized that a party seeking equitable relief, such an injunctive relief, must come before the court with 'clean hands.'"  Combined Ins. Co. of Am., 36 N.C. App. at 182, 243 S.E.2d at 819.  A breach is substantial and material if it is one that "is such an essential part of the bargain that the failure of it must be considered as destroying the entire contract; or where it is such an indispensable part of what both parties intended that the contract would not have been made with the covenant omitted[.]"  Wilson, 261 N.C. at 43, 134 S.E.2d at 242–43.

In turn, Maaco contends that Defendants have not pointed to any specific language in the Franchise Agreement that was breached and, furthermore, that Defendants have not challenged the enforceability of the non-compete provisions of the Franchise Agreement.  Maaco, therefore, contends, that it has a strong likelihood of succeeding on the claim for breach of the non-compete provision in the Franchise Agreement.  After reviewing the pleading and the Franchise Agreement language, the Court finds that this factor weighs in favor of granting the motion for preliminary injunction, as there a strong likelihood that will Maaco will prevail on its claim that Defendants have breached at least the non-compete clause in the Franchise Agreement, and perhaps other provisions of the Franchise Agreement.

    *b. Irreparable Harm*

Next, the Court considers whether Maaco is likely to suffer irreparable harm from

-6-

Case 3:20-cv-00149-MOC-DCK   Document 28   Filed 09/17/20   Page 6 of 13

Defendants' actions. As a threshold matter, Maaco must make a "'clear showing of irreparable harm . . . and the required irreparable harm must be neither remote nor speculative, but actual and imminent.'" Scotts Co. v. United Indus. Corp., 315 F.3d 264, 283 (4th Cir. 2002) (citing Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991)). This rule applies equally to Maaco's claimed potential loss of customers or the threat of a loss of goodwill; such harm must be "actual and imminent." Direx, 952 F.2d at 812. This is so because "'[t]he basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'" Id. (citing Samson v. Murray, 415 U.S. 61, 88 (1974)).

In support of its position that Maaco will be irreparably harmed absent a preliminary injunction, Maaco argues that "[i]n the wake of a franchisee's breach of the Franchise Agreement and cessation of operation as a Maaco center, one of Maaco's top priorities is to re-establish an authorized Maaco Center in order to retain its goodwill and market share in the market that was formerly served by Defendants." (Doc. No. 3-1 at p. 11). Maaco also claims that "[i]f Defendants are allowed to operate a competing Center at the same location or within the covenanted geographical area and to continue to use the knowledge, training, and confidential and proprietary information that they gained from Maaco, they would unfairly achieve a significant competitive advantage over all of the legitimate Maaco centers in this area[.]" (Id. at p. 12). Finally, in support of the preliminary injunction motion, Maaco argues that "if Defendants are allowed to violate the covenant not to compete contained in their Franchise Agreement, other franchisees will be tempted to leave the franchise system after they have been afforded the opportunity to gain the benefit of the knowledge and training provided by the system." (Id.).

In response, Defendants first maintain that there is no evidence that AllStar Auto Body & Paintworks is a competing Center.  Defendants contend that the evidence establishes, instead, that the wholesale work with local car dealerships forming the basis of AllStar Auto Body & Paintworks business is not the type of business Maaco typically targeted, solicited, or sought to develop.  Furthermore, Defendants maintain that no customer has ever confused AllStar Auto Body & Paintworks as a Maaco-affiliated shop.  Defendants contend that there is no evidence that Defendants are using "the knowledge, training, and confidential and proprietary information that they gained from Maaco."  Defendants contend that, to the contrary, AllStar Auto Body & Paintworks is based on a separate business model than that of Maaco, and was developed by the sweat, equity, and hard work of Mr. Lafferty alone.

Defendants further contend that there is no evidence that Defendants' operation of AllStar Auto Body & Paintworks is giving Defendants a significant competitive advantage over all of the legitimate Maaco centers in the area.  Instead, when customers come to AllStar Auto Body & Paintworks looking for a Maaco center, Mr. Lafferty refers them to the only other Maaco center in the Omaha area.  Defendants contend that Maaco has not alleged that it has actually lost customers since Defendants have been operating AllStar Auto Body & Paintworks, and Defendants maintain that this is because such facts do not exist.  Defendants maintain that the Franchise Business started losing customers over two years ago as a direct result of Maaco's actions.  Defendants assert that they pleaded for help for over two years to no avail, while Maaco converted all advertising and marketing funds from its franchisees in order to benefit itself.  Defendants contend that Maaco cannot establish that it has suffered any irreparable harm related to the non-compete clause and that any harm Maaco has suffered as a result of the dwindling

Franchise Business was a result of its own actions, not those of Defendants.

The Court has carefully considered the record and both parties' arguments regarding irreparable harm, and the Court finds that Maaco has not made a clear showing of irreparable harm caused by Defendants' actions. Thus, this factor weighs against granting the preliminary injunction motion.

### c. *Whether the Balance of Equities Weighs in Plaintiff's Favor*

Next, as to whether the balance of equities weighs in Plaintiff Maaco's or Defendants' favor, Defendants assert that it is ironic that Maaco argues that "[a]ny harm resulting to Defendants from the requested injunction would be entirely self-inflicted" because the exact opposite is true. Again, Defendants maintain that Maaco did nothing for over two years while the Franchise Business suffered and eventually failed. Defendants maintain that Maaco never took any action with respect to Defendant's "lack of retail business and customers" as identified by two separate Regional Directors. Defendants assert that the Franchise Business' revenues and profitability continued to radically decline over a two-year period, a fact known by Maaco due to the required reports pursuant to the Franchise Agreement. See (Doc. No. 1-1, Franchise Agreement, p. 6 ¶ 5.B.). Defendants maintain that the only action Maaco did take—ceasing all television adverting—actually hurt the Franchise Business further. When a plaintiff causes its own harm, a preliminary injunction is not warranted. See A Squared Joint Venture v. United States, 133 Fed. Ct. 291, 299 (2017). In addition, Defendants maintain that preventing Defendants from operating AllStar Auto Body & Paintworks would create real, serious hardships for Defendants. Defendants note that, since 2008, Mr. Lafferty's sole source of income has been the Franchise Business, and since that failed, AllStar Auto Body & Paintworks is the only way

-9-

Mr. Lafferty can support his family. Defendants own the building where Mr. Lafferty has worked since 2008, and he has established his own good will with the wholesale dealership work that supports AllStar Auto Body & Paintworks.

     Here, the Court finds that the balance of equities weighs in favor of denying the preliminary injunction, particularly given that AllStar Auto Body & Paintworks is the sole source of income for Mr. Lafferty and, as he explains, the only way he can support his family. To the contrary, Maaco is a large corporation that will continue to operate successfully if the preliminary injunction is denied. Furthermore, even if the preliminary injunction is denied at this time, if Maaco ultimately succeeds on the breach of contract claim against Defendants, Maaco can still recover any monetary damages to which it is entitled. Courts have found that the balance of equities tips in favor of a former franchisee when the hardship to the franchisee involves his sole livelihood. See, e.g., Prosperity Sys., Inc. v. Ali, No. CCB-10-2024, 2010 WL 5174939, at *6 (D. Md. Dec. 15, 2010) ("The court recognizes that [the plaintiff frachisor's] hardships are serious and real, and that courts in the past have found the balance of equities to tip in favor of the franchisor when a former franchisee violates a covenant not to compete. . . . In this case, however, [the defendant's franchisee's] hardship outweighs [the plaintiff frachisor's]. [The defendant franchisee] is a small businessman. If the court enjoins him from operating his restaurant under his own name, he will likely lose his business and be unable, at least for some period of time, to support himself or his family. Further, he has been operating a pizza restaurant at that location for many years, arguably establishing his own good will with customers.") (internal citation omitted). In sum, the Court finds that the balance of equities weighs against granting the preliminary injunction motion.

### d. Whether an Injunction is in the Public Interest

Maaco's argument that a preliminary injunction is in the public interests focuses on two concepts. First, Maaco maintains that the public derives substantial benefit from the services provided by those who, like Maaco, train entrepreneurs and develop new businesses. Second, Maaco maintains that if the covenant is not enforced, Defendants will continue to mislead the public, unfairly compete with Maaco's authorized area franchisees, unfairly capitalize on Maaco's trade secrets, and unfairly piggyback on Maaco's goodwill. Maaco argues that the public interest is served when parties are required to uphold their contracted-for agreements and, therefore, this Court should enter the preliminary injunction, thereby enforcing the covenant not to compete.

In response, Defendants assert that the public derives substantial benefit from the service provided by entrepreneurs, but that the entrepreneur in this case is Mr. Lafferty, not Maaco. Defendants assert that Mr. Lafferty can produce an income today through his own entrepreneur spirit based on the good will he exclusively developed through the wholesale dealership business. Furthermore, Defendants maintain that for two years, Mr. Lafferty sought out Maaco's services to help "develop" his business, and time and time again, he was told "corporate did not want to talk" to him.

Defendants assert that, in addition, there is absolutely no evidence that Defendants' operation of AllStar Auto Body & Paintworks is misleading the public, unfairly competing with Maaco's authorized area franchisees, unfairly capitalizing on Maaco's trade secrets, or unfairly piggybacking on Maaco's goodwill. To the contrary, Defendants are referring any customer that comes in looking for Maaco to the only other Maaco center in the Omaha area. And, as argued

-11-

above on several different points, Defendants maintain that AllStar Auto Body & Paintworks is capitalizing on the sweat and goodwill of Mr. Lafferty alone. Defendants reiterate that, but for Mr. Lafferty's hard work, he would be unemployed and unable to support his family, and such result would not be "in the public interest."

The Court finds that the final factor is neutral as to whether the preliminary injunction should be issued. Nevertheless, the Court concludes that, applying all of the above <u>Winter</u> factors, the factors weigh against granting Plaintiff's preliminary injunction motion. Thus, the motion for preliminary injunction will be denied.

## IV. Conclusion

Here, the Court finds that Maaco has failed to meet the high burden required for entry of the extraordinary remedy of a preliminary injunction.[2] Application of the <u>Winter</u> factors results in a tipping of the balance in favor of Defendants. Accordingly, Maaco's Motion for a Preliminary Injunction will be denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. No. 3) is **DENIED**.

---

[2] Defendants argue, alternatively, that Plaintiff's counsel failed to confer and attempt in good faith to resolve areas of disagreement with Defendants' counsel and failed to describe any attempts to confer with Defendants' counsel in Plaintiff's Motion for Preliminary Injunction as required by this Court's local rules. <u>See</u> LCvR 7.1(b). Defendants further argue that Plaintiff's counsel failed to confer regarding this Motion for Preliminary Injunction. According to LCvR 7.1(b), "a motion that fails to show that the parties have properly conferred or attempted to confer may be summarily denied." The Court is denying the motion for preliminary injunction after applying the <u>Winter</u> factors. Thus, the Court does not consider this alternative ground for denying the preliminary injunction motion.

-12-

Signed: September 17, 2020

Max O. Cogburn Jr.
United States District Judge

-13-